UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THORNTON AND COMPANY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-359 |
| | § | |
| POLYMER TRADING USA, LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OF FINDINGS OF FACT AND ANALYSIS

**I.**

Before the Court is the testimonial and documentary evidence presented by the plaintiff, Thornton and Company ("Thornton") and the defendants and counterclaimants, Linda Meyer and Polymer Trading USA, LLC ("Meyer and/or Polymer"). The Court has the benefit of the parties' proposed findings of fact, conclusions of law and closing arguments. After a careful review of the evidence and arguments, the Court determines that the evidence supports Thornton's claim(s) against Meyer and Polymer and that Meyer's counterclaims are unsupported by the credible evidence.

**II.**

Thornton and Meyer entered into an oral contract effective July of 2012, whereby Meyer served as independent sales agent for Thornton for commercial sale of Thornton's polymer products on the international market. Under the terms of agreement Meyer would sell Thornton products to her customers and develop the market for the parties' mutual benefit. In addition to the sale of Thornton polymer products, Meyer was free to purchase Thornton products for sale by her company and sell those products independently of the agreement.

It was understood by the parties that Thornton was the seller of its products and that all sales would be invoiced under Thornton's name. In turn, Meyer would receive commissions on sales equal to 30% of the gross profits, estimated to be 12% of the sale price. Meyer also received a $15,000 per month draw against anticipated commissions for the first 12 months. However, by December of 2012, the

parties disagreed concerning the way Meyer was invoicing the customers. Meyer was invoicing customers under her business name and as a result was receiving Thornton's sales proceeds. She would then deposit the proceeds into her account and pay Thornton from that account. When Thornton realized what Meyer was doing it instructed Meyer to discontinue that practice. She agreed and the parties continued under the agreement with the understanding that Meyer was not to handle Thornton's sale proceeds.

### III.

In this suit, Thornton contends that Meyer breached the contract on several occasions before and after the December meeting by: (a) continuing to instruct customers to send sales proceeds to her or her company, Polymer Trading USA; (b) generating Polymer invoices stating that stated that she and/or her company was the seller not Thornton; (c) failing to promptly pass along to Thornton proceeds improperly received by Meyer/Polymer; and, (d) failing to pass on to Thornton all proceeds for Thornton products. Based on these alleged breaches, Thornton claims that Meyer/Polymer has withheld money owed to Thornton for sales in excess of $514,746.42.

Additionally, Thornton seeks reimbursement of $48,791.36 representing the difference between commissions earned and advances paid, and $2,308.50 that Meyer/Polymer received from a Chiquita Brands case that did not involve the sale of product. Finally, Thornton seeks sanctions against Meyer for failing to produce bank records as ordered by the Court, exemplary damages and attorney/s fees pursuant to state law.

Meyer denies that she breached the contract and, therefore, filed counterclaims against Thornton. She claims that Thornton breach the contract, violated the "money had and received" doctrine, committed conversion, and tortiously interfered with her prospective business relationships. She contends that Thornton breached the contract in the following respects: (a) charging as expenses against commissions certain shipping charges, freight costs and taxes thereby reducing her commission; (b) failing to provide an accounting of sales from which profits and expenses could be determined; (c) confusing customers by sending Thornton invoices for products after Meyer had already invoiced the customer; (d) failing to pay

commissions owed to Meyer; and, (e) tortuously interfering with business relationships with certain customers. Further, she contends, Thornton failed to make proper disclosures concerning its damages pursuant to federal rules and, therefore, should not be allowed to recover.

### IV.

Both Thornton and Meyer sued for "breach of contract" and "money had and received." Under *Erie*, a federal court sitting in diversity applies the substantive law of the state where the alleged beach occurred. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Texas law requires that a party suing for breach of contract establish the following elements: (1) the existence of a valid contract; (2) performance or tendered performance by the moving party; (3) breach of the contract by the opposing party; and (4) damages sustained as a result of the breach. *See Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal,* 167 S.W.3d 443, 450 (Tex. App.-Houston [14th Dist.] 2005, pet. denied)).

Under Texas law, for an agreement to be binding, it must contain: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Hubbard v. Shankle,* 138 S.W.3d 474, 481 (Tex. App.-Ft. Worth 2004, pet. denied). "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and how they acted, not on their subjective state of mind." *Tex. Disposal Sys. Landfill, Inc.* v. *Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 589 (Tex. App.-Austin 2007, pet. filed) (citing *Copeland v. Alsobrook,* 3 S.W.3d 598, 604 (Tex. App.-San Antonio 1999, pet. denied)). Thus, the ultimate issue of "[w]hether a contract exists involves both questions of fact, such as the intent of the parties, and questions of law such as whether the facts as found constitute a contract." *Zimmerman* v. *H. E. Butt Grocery Co.,* 932 F.2d 469, 471 (5th Cir. 1991).

A cause of action for "money had and received" requires the party seeking recovery to establish that the funds derived from the sale of a product or debt collected belong to him or her. *See Staats v.*

*Miller*, 150 S.W.2d 581, 584 (Tex. 1951). A claimant need show only that the person holds money which, in equity and good conscience, belongs to the claimant. *Id.* (citations omitted).

Apart from her contract and money had and received claim, Meyer asserts claims for business disparagement and tortious interference with continuing business relations. A business disparagement claim requires Meyer to establish that the loss is a pecuniary one actually experienced, such as loss sales. *See,* W. Keeton, *Prosser and Keeton on the Law of Torts*, § 128 at 971 (5th Ed. 1984). She must prove that the published words were disparaging, false, published with malice, without privilege, and the publication caused damages. *See Forbes, Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167 (Tx. 2003).

To establish tortious interference with continuing business relations, Meyer must prove that a reasonable probability existed that she would have entered into a business relationship with a customer and that Thornton interfered with that opportunity, that the interference proximately caused her injury, and that she suffered damages as a result. *See Plotkin v. Joekel*, 304 S.W.3d 455, 487 (Tex. App.— Houston [1st Dist.] 2009).

**V.**

The evidence establishes that Thornton's claim for breach of contract is meritorious and that Meyer's identical claim of breach of contract is not. It is undisputed that the parties entered into an oral contract effective July of 2012. Within a few months, Meyer disputed Thornton's calculations of costs associated with the sale of the product. She claimed that certain categories of costs ─ add-on-costs ─ that were not part of the agreement such as document fees, storage fees, sales taxes, financing costs and bank charges (interest and factoring costs) were being deducted from gross sales resulting in a lower figure for calculating commissions. Meyer has failed to produce evidence that any such fees were charged against her commissions or, if deducted, that such deductions violate Generally Accepted Accounting Principles.

From the beginning, Meyer substituted her shipping invoices in the place of Thornton's, instructing customers to pay her invoices, even though this was not a term of the agreement. She testified initially that the agreement permitted her to collect Thornton's funds. Later in her testimony, however, Meyer admitted that Thornton never actually agreed to that term. Meyer's testimony, that the agreement

permitted her to collect Thornton's funds, is incredulous. This finding is borne out by the fact that when Meyer's conduct was discovered, she did not argue that she was operating within the contract. Instead, she immediately agreed to stop the practice. Nevertheless, she did not.

Meyer's claim about commissions paid is also wrong. Her testimony that the $15,000 monthly draw against commissions was not to be returned even if she failed to generate sufficient commissions to cover it, is untrue. She does not point to any contract term that supports this claim. Her testimony, to this effect, is refuted by her admission that the monthly draws were to be deducted from earned commissions. Equally damaging to Meyer's credibility and her counterclaims is the fact that she unilaterally terminated the contract in April of 2013, even though she continued to accept monthly draws. *See* [Defendant's Proposed Findings of Fact and Conclusions of Law, Doc. No. 65-2 at III(12)]. Because Meyer's evidentiary proffers and testimony are rife with inconsistencies, the Court rejects her testimony.

The Court also rejects Meyer's testimony because of her contemptuous conduct directed at the Court's order to produce certain bank records. Meyer's personal and corporate bank records were necessary for both, her claims and those of Thornton. She failed and refused to produce them as ordered. Therefore, to the extent not previously stated heretofore, the Court additionally finds that:

(a) Meyer received $30,000 in monthly draws, May and June, that she did not earn;

(b) Meyer charged Thornton excessive wire transfer fees;

(c) Thornton product sales equaled or exceeded $8.3 million during the terms of the contract;

(d) Thornton has not received all funds collected by Meyer for the sale of its products;

(e) Meyer was paid $137,000 in commissions through April of 2013, and there is no evidence that she is due commissions for sales after that time;

(f) gross profits through April of 2013, approximated $996,000 based on a 12% projected profit margin from which commissions of $298,000 were due Meyer minus $180,000 in monthly draws and $137,000 in commissions resulting in an overpayment to Meyer;

(g) Meyer deposited Thornton funds into both her personal and Polymer bank accounts and has refused to produce complete bank statements for those accounts or any other account(s) that she utilized in collecting Thornton's proceeds;

(h) Meyer admits withholding $85,000 from Thornton product sale(s);

(i) Meyer also admits withholding $2,308.58 from the Chiquita Brand case which sum the Court finds is owed to Thornton;

(j) Meyer unlawfully withheld $565,846 in sale products collected on the sale of Thornton products;

(k) The Court finds by clear and convincing evidence that the harm to Thornton was a result of malice and/or fraud on the part of Meyer and that she used her company, Polymer Trading USA LLC, to assist in carrying out her fraudulent conduct to Thornton's detriment;

(l) Meyer and Polymer intentionally and improperly caused customers to make payments for the purchase of Thornton's products to Meyer/Polymer rather than to Thornton. She then failed to pass those payments along to Thornton, even though there is no question that Thornton is entitled to those payments;

(m) Based on Meyer and Polymer's illegal and outrageous conduct the Court finds that Thornton has carried its burden by a preponderance of the evidence on it claims for breach of contract and "money had and received";

(n) Meyer has failed to establish her counterclaims for breach of contract, money had and received, business disparagement and tortious interference with business relations.

(o) the Court awards exemplary damages against Meyer individually in the amount of $150,000; and,

(p) the Court also awards separately, sanctions against Meyers in the amount of $150,000.

Based on the Court's findings, the Court concludes that Meyer's claims for breach of contract, money had and received, conversion, tortious interference with prospective business relationship and business disparagement are disingenuous and diversionary. There is no merit in these claims.

## VI.

Thornton and Meyer and Polymer seek attorney's fees for breach of contract under Chapter 38 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001, *et seq*. The Court finds that Thornton is entitled to reasonable attorney's fees under Chapter 38, and that it has met the necessary requirements. On the other hand, Meyer and Polymer have not. In fact, Meyer's claim for breach of contract fails. Therefore, the Court awards a reasonable attorneys' fee to Thornton based on findings that the time and labor expended was necessary, the fee rate is reasonable and that the amount of time expended was made necessary due, in part, to misconduct by Meyer. Finally, the Court determines

that the fees requested are in line with awards made in similar cases where competing claims for breach of contract are made and a trial on the merits is necessary. Therefore, the Court awards the following fees:

(1) $96,216.60 in attorney's fees and expenses incurred as of the date the plaintiff's motion for attorney's fees; and

(2) The following conditional attorney's fees for an unsuccessful appeal by the defendants:

    (i) $19,500 for an appeal to the Fifth Circuit of Appeals, if the case is submitted on the briefing;

    (ii) an additional $10,300 if the case is set for oral argument; and

    (iii) an additional $3,750 in the event of a motion for rehearing or reconsideration.

It is so Ordered.

SIGNED on this 26th day of June, 2015.

_____
Kenneth M. Hoyt
United States District Judge